IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| NANCY A. NANCE, | ) |
| Plaintiff, | ) |
| v. | ) No. 07-3162 |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

Plaintiff Nancy A. Nance appeals from a final Decision of the Social Security Administration (SSA) denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416 and 423. Nance brings this appeal pursuant to 42 U.S.C. § 405(g). The parties have filed cross-motions for summary judgment or affirmance pursuant to Local Rule 8.1(D). Motion for Summary Judgment (d/e 12); Motion for Summary Affirmance (d/e 15). For the reasons set forth below, the Court orders a limited remand of this case for further proceedings.

## FACTS

Nance applied for DIB on January 7, 2004. She alleged that she became disabled June 7, 2001, based on heart attacks, bursitis of the joints, high blood pressure, depression, arthritis, and carpal tunnel syndrome. At her alleged onset date, Nance was working as a customer service phone representative for Franklin Life Insurance Company (Franklin Life); she had worked for this company for more than 40 years. The SSA denied Nance's claims initially and on reconsideration.

Nance requested an administrative hearing, which was held via video conference December 5, 2006. On February 15, 2007, an Administrative Law Judge (ALJ) issued a Decision denying Nance's application. The Appeals Council denied her request for review, and she now seeks judicial review. Nance argues that the ALJ improperly found Nance's ability to use her hands and fingers to perform work-related tasks requiring gross and fine manipulation as unrestricted. Because the issue she raises on appeal is narrow, this Opinion concentrates only on the facts relevant to her hand-related impairments.

A. MEDICAL HISTORY

According to the record, Nance first began reporting pain in her hands

in June of 2004. On June 4, 2004, Nance told her treating physician, Dr. Gary Shull, that she was experiencing pain in her knuckles and wrists and numbness when she drove. Additionally, when she woke up each morning, her knuckles were stiff and swollen, but this problem lasted only about 15 minutes each day. She also stated that she could not do her usual work. Nance indicated that her symptoms had worsened over the last year. Dr. Shull advised that she might have rheumatoid arthritis. He referred her to a rheumatologist.

Nance saw Dr. Jeffrey Horvath, a rheumatologist, on August 3, 2004. She told him that she experienced pain and numbness, prickling, or tingling, which Dr. Horvath described as paresthesias, radiating up into her forearms. She also told him that her symptoms were getting worse. Dr. Horvath reviewed X-rays that Dr. Shull submitted and concluded that Nance had mild joint narrowing and periarticular osteopenia without erosive changes, fractures, or dislocations. He also discussed blood work Dr. Shull had ordered, noting that Nance's rheumatoid factor, an indicator of rheumatoid arthritis, was negative. He indicated that a full rheumatologic review of Nance's systems was negative. Dr. Horvath ordered nerve studies, which produced results consistent with mild bilateral median neuropathies. He

3

also found soft tissue fullness across the metacarpophlalangeal (MP) joints (the large joints at the base of each finger) and tenderness at these joints and at the wrist.

Dr. Horvath concluded that Nance suffered from bilateral carpal tunnel syndrome and osteoarthritis in her hands. He also noted "[q]uestionable early seronegative inflammatory arthritis, possibly contributing to her carpal tunnel." R. 183. Dr. Horvath advised Nance to wear wrist splints and consider surgery if her problems continued. He prescribed Lodine, a medication used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis and rheumatoid arthritis.

On March 10, 2005, Dr. Shull examined Nance again. She told him that she had been wearing the wrist splints, but her hands were still numb. Dr. Shull noted that her rheumatoid screen was negative. He recommended new nerve conduction studies.

Nance underwent an EMG and nerve conduction studies March 21, 2005. Dr. Claude Fortin, who performed the tests, concluded that her results were consistent with moderate bilateral carpal tunnel syndrome.

In April of 2005, Nance saw Dr. Horvath again.[1]  She reported increasing numbness and paresthesias in her hands and wrists and noted that the symptoms were worse in her right hand.  Dr. Horvath reviewed the studies conducted by Dr. Fortin and found that Nance's condition had progressed to moderate carpal tunnel syndrome.  R. 152.  Nance reported that her hands fell asleep "constantly," even while she worked on the computer or drove.  R. 152.  She reported that she had worn the wrist splints and taken her medication.  Dr. Horvath referred her to a surgeon, Dr. Wottowa, for consideration of a carpal tunnel release operation.

Subsequently, Nance consulted Dr. Wottowa.  He cautioned that carpal tunnel surgery would not eliminate any pain caused by arthritis.  She decided to forego surgery and rely on the wrist splints instead.

Nance returned to Dr. Horvath on October 3, 2005.  She stated that her arthritis was "okay," but her carpal tunnel syndrome still bothered her. R. 151.  Nance said that her wrist splints helped at night, but she still experienced pain, tingling, and numbness during the day when she wrote, read, held her hands up, or drove.  Dr. Horvath recommended she undergo

---

[1] The exact date of this visit is illegible in the record. R. 152. Dr. Horvath's notes state that Nance "saw Dr. Fortin last month," however. Id.  Thus, the visit most likely occurred in April.

surgery despite the possibility that her pain would remain because the arthritis might not be causing all of her pain, and regardless, most of the paresthesias she experienced would abate. Dr. Horvath recommended she consult Dr. Wottowa again.

Nance returned to Dr. Horvath on April 3, 2006. Dr. Horvath noted osteoarthritic changes in her hands. He also noted that Nance had seen Dr. Wottowa again, and he recommended that she proceed with surgery. She said that she was reluctant to undergo surgery that would not eliminate arthritis pain, however. Dr. Horvath again advised her that the surgery should cure her problems with lack of sensation, grip strength, and paresthesias. He recommended that she return to Dr. Wottowa.

Nance again visited Dr. Horvath on October 4, 2006. She told him that she experienced pain in her left thumb while playing cards. He diagnosed increasing osteoarthritis, particularly in the thumb joints. Nance also told Dr. Horvath that she had not been wearing the wrist splints and had not returned to Dr. Wottowa to discuss carpal tunnel surgery. She reported continued paresthesias in her hands, particularly in the morning or on raising her hands. Dr. Horvath recommended that she resume wearing the splints and follow up with Dr. Wottowa.

An SSA physician reviewed Nance's medical records and offered an opinion as well. The doctor's name is illegible. His opinion states that "despite the aches/pain which clmt has in her joints, it is noted in the medical of 2/21/04, she was headed for a 3 week fishing trip in MO so that she is not significantly restricted in going about her daily routines." R. 272. The SSA doctor found no manipulative limitations.

B.    ADMINISTRATIVE HEARING

Nance's administrative hearing occurred December 5, 2006. She was the only witness who testified.

At the time of the hearing, Nance was 64 years old, 4'11" and weighed 185 pounds. She lived at home with her husband, who drove her to the hearing. Nance retired from her job at Franklin Life on December 31, 2001. At the time of the hearing, she was receiving $879 a month in social security retirement benefits and around $900 a month from a retirement pension. Her husband also was retired.

Nance was a high school graduate who could read and write. She testified that she had worked for Franklin Life for 41 years. Her last position there, which she held for 12 years, was in customer service. She sat at a desk, talked on the telephone, and used a computer. Nance testified

7

that she used her hands and fingers 100 percent of a typical day on the job. While she talked on the phone, she typed on the computer. After she had a heart attack in June of 2001, she returned to her Franklin Life job but found that she could not handle the pressure and stress. Her cardiologist strongly suggested that she end her career.

Nance told the ALJ that several conditions would keep her from returning to work, including the carpal tunnel syndrome in both of her hands and the rheumatoid arthritis in her joints. She stated that she could not perform many tasks she used to be able to handle, such as picking up pins. She still sewed, but had to make only a couple of stitches at a time because her fingers got numb. Even brushing her teeth and combing her hair strained her hands. She rarely cooked meals because picking up pots hurt her wrists. She could not use a potato peeler or open a jar. She did not do laundry, but she could load a dishwasher. She could lift dishes, but had to use both hands to lift a gallon of milk, and even then, her wrists would hurt. She could play cards, but she could not shuffle. Every morning when she awoke, her hands were stiff and she "[couldn't] close them all the way." R. 287. It took 15 to 20 minutes to "get" her hands "going." Id. She could drive, but did not do so often. She went fishing but no longer held the pole;

she used a rod holder instead. When the fish bit, her husband reeled them in. She did not use her home computer for more than 10 minutes at a time because doing so hurt her wrists and hands.

Nance testified that she had considered carpal tunnel surgery, but her sister had the same surgery and still experienced pain. Because it was not guaranteed to eliminate her pain, she was "hesitating on having it done." R. 294. She stated her pain was "coming very, very close" to being so bad that she would get the surgery done, though. Id.

The ALJ noted that Nance's problems seemed age-related and asked her how her condition differed from other peoples'. Nance replied that at 64, she was too young for these impairments. None of her friends suffered from carpal tunnel syndrome, and they could all open cans and jars.

C.   THE ALJ'S DECISION

The ALJ concluded that Nance was not disabled for social security purposes and issued her Decision on February 15, 2007. Preliminarily, the ALJ determined that Nance met the insured status requirements of the Social Security Act through March 31, 2007. She then discussed the five-step analysis set out in 20 C.F.R. §§ 404.1520 & 416.920. The analysis requires a sequential evaluation of: (1) whether claimant is engaged in

9

substantial gainful activity; (2) the severity and duration of the claimant's impairment; (3) whether the impairment equals a listed impairment in Appendix 1; (4) whether the impairment prevents claimant from doing her past relevant work; and (5) whether the claimant can perform other work, given her residual functional capacity, age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4) & 416920(a)(4).  The claimant has the burden of presenting evidence and proving the issues on the first four steps.  Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).  The SSA has the burden on the last step; the SSA must show that, considering the listed factors, the person can perform some type of gainful employment that exists in the national economy.  Id.; Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995).

    The ALJ then applied this analysis to Nance's request for DIB.  First, the ALJ held that Nance had not engaged in substantial gainful activity since June 7, 2001, her alleged onset date.  Second, she found that Nance suffered from several severe impairments, including carpal tunnel syndrome and arthritis.

    Third, however, the ALJ held that none of Nance's impairments or combinations of impairments met or medically equaled any of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, the ALJ concluded that Nance failed to demonstrate that she met or equaled a musculoskeletal listing. The ALJ stated that Nance failed to demonstrate "with credible evidence" that she could not perform gross or fine motor movements with her hands. R. 15. The ALJ explained:

> She has had mostly negative testing for rheumatoid arthritis and despite complaints of arthralgias she is usually found to have normal strength, motion, and sensation in her joints without significant swelling; see for example Exhibit 4F page 20 dated August 2004 which mentions that the claimant has stated she has had hand pain for years and on testing she had some fullness in fingers and wrists (she is obese) and it was noted that she had nerve studies which revealed bilateral median neuropathies mild with no ulnar neuropathy (mild carpal tunnel syndrome); she was noted to have normal gait. There are no findings that she has more than age related osteoarthritis; for example at Exhibit 7F dated October 4, 2006 it is noted that she has osteoarthritis changes in her hands, but that her wrists, elbows, shoulders, hips, knees, feet and ankles move well throughout without tenderness or synovitis; at Exhibit 4F page 19 it is noted that the claimant complained of problems with her hands but the hand exam was unremarkable and symptoms were related to carpal tunnel syndrome.

R. 15.

Fourth, the ALJ held that Nance's hand conditions did not prevent her from doing her past relevant work. According to the ALJ, no objective medical findings establish that Nance is so limited that she could not

11

perform her past work. Regarding her hand conditions, the ALJ stated:

> She testified that she has difficulty grasping small objects and can't close her hands all the way. She testified that her wrists hurt when she brushes her teeth. The claimant testified that she rarely cooks. She testified that she is in constant pain. She testified that it takes two hands to lift a gallon of milk, she can pick up plates but can not open a jar. . . . She does mending but her fingers go numb. She stated that she has swelling in her hands and ankles . . . . Her retirement home is on a lake and she enjoys fishing; she stated that she fishes 2-3 times per week and last fished in October 2006 and uses a rod holder. . . . She plays cards, last playing the night before; she said she can not shuffle but plays various card games including bid euchre and bridge; she also plays dominos. . . . When asked why she did not have the carpal tunnel surgery recommended by her doctor, she said that her doctor told her there would be no guarantee it would resolve the symptoms and it would be a temporary fix. Actually, her doctor stated at Exhibit 4F page 8 dated April 3, 2006, that carpel tunnel surgery would not take away pain from osteoarthritis but that surgery should correct any problems with sensation, strength and parasthesias; examination at that time demonstrated "joints -- good range of motion throughout without tenderness or synovitis"; she had not [sic] other complaints other than carpal tunnel symptoms and her noted osteoarthritis. At the hearing, the claimant seemed puzzled when asked why she thought her symptoms such as not being able to open a jar were different (as to degree) than other people of the same age with age related osteoarthritis, etc., people who are able to work despite age related diminished ability to grip, etc.

R. 16-17. The ALJ found Nance's subjective statements regarding the intensity, persistence, and limiting effects of her symptoms not credible. She concluded that Nance's testimony regarding her ability to drive, fish,

and mend showed that Nance could grip and manipulate large and small objects. According to the ALJ, Nance failed to demonstrate that her increasing arthritis was related to anything but age. Moreover, she noted, Nance's medical records showed a normal range of motion and little swelling; Nance had not found the carpal tunnel symptoms significant enough to undergo surgery. Her own doctors never indicated that her impairments would prevent her from performing gross and fine manipulations during full-time work.

The ALJ also discussed Nance's last job. She stated that as a customer service representative, Nance answered the telephone and used the computer and reference books. The ALJ found no medical link between "her diagnosis of mild carpal tunnel syndrome and an inability to reach, finger, etc." R. 19. She concluded that Nance's past work "as she described the job," did not require abilities beyond those Nance now possessed. R. 20.

Because the ALJ found that Nance could perform her prior work, she did not consider the fifth step, which asks whether a claimant could perform other work, given her residual functional capacity, age, education, and past work experience. Thus, the ALJ found that Nance was not disabled for

13

social security benefits purposes.

D.   THE APPEALS COUNCIL

Nance asked the Appeals Council to review the ALJ's Decision. She argued that the Decision was contrary to law and unsupported by substantial evidence. Specifically, Nance asserted that her prior job required constant handling and fingering, and her carpal tunnel syndrome and osteoarthritis prevented her from gripping and fingering. According to Nance, the ALJ ignored her testimony regarding the nature and limitations of her conditions and concluded that Nance simply suffered from age-related impairments. Nance argued that the ALJ should have consulted a vocational expert before determining that Nance could return to her past work. She also pointed out that her treating physician diagnosed moderately severe carpal tunnel syndrome and osteoarthritis and therefore found that Nance had limited ability to use her hands and fingers. On April 27, 2007, the Appeals Council denied Nance's request for review.

ANALYSIS

Nance now asks this Court to find her disabled or remand to the ALJ for further consideration. Nance argues that the record does not support the ALJ's finding that Nance's hand and finger use is unrestricted and that

the ALJ failed to build an accurate and logical bridge from the evidence to her Decision.

The Court reviews the ALJ's Decision to determine whether it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The issue before this Court is whether the ALJ's findings were supported by substantial evidence, not whether Nance is disabled. Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003). The ALJ must at least minimally articulate her analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the ALJ's analysis to determine whether the ALJ considered all important evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

Here, the Court cannot track the ALJ's analysis because she failed to discuss Nance's 2005 diagnosis of moderate carpal tunnel syndrome. The ALJ repeatedly referred to Nance's carpal tunnel syndrome as "mild" and held that Nance had not established a medical link between her "mild carpal

tunnel syndrome" and an inability to reach or finger. R. 15, 18, 19. Yet, in the spring of 2005, Dr. Horvath and Dr. Fortin both analyzed the results of EMG and nerve conduction studies, and both found that Nance's carpal tunnel syndrome was moderate. This evidence was relevant, and the ALJ failed to analyze it. Thus, the Court cannot find that the ALJ's opinion is supported by substantial evidence. On remand, the SSA must consider the diagnoses of moderate carpal tunnel syndrome in assessing Nance's ability to use her hands to perform her prior work.

The ALJ is not required to call a vocational expert to testify, however. Nance argues that to analyze her past work activity, the ALJ should have elicited the testimony of a vocational expert. Before concluding, the Court must reject this argument. Nance cites Social Security Ruling 96-9p, which states:

> Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base. . . . When the limitation is less significant, especially if the limitation is in the non-dominant hand, it may be useful to consult a vocational resource.

SSR 96-9p.[2] This ruling does not explicitly require the testimony of a

---

[2] Available at http://socialsecurity.gov/OP_Home/rulings/di/01/SSR96-09-di-01.html.

vocational expert. Moreover, it applies only to the fifth step of the sequential analysis, which the ALJ did not reach here. Additionally, the ALJ did not fail to determine the specific demands of Nance's prior work, as Nance argues. Instead, the ALJ relied on Nance's own description of her duties. The Court cannot find that the ALJ abused her discretion by failing to consult a vocational expert.

THEREFORE, the Motion for Summary Judgment (d/e 12) is ALLOWED in part, and the Motion for Summary Affirmance (d/e 15) is DENIED. The Decision of the Commissioner is reversed and remanded for further proceedings consistent with the Opinion, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS THEREFORE SO ORDERED.

ENTER: September 9, 2008

>    FOR THE COURT:

>> s/ Jeanne E. Scott
>> JEANNE E. SCOTT
>> UNITED STATES DISTRICT JUDGE